IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ECONOMIC RESEARCH ASSOCIATES, INC<br>50 Main Street<br>14th Floor<br>White Plains, NY 10606<br>(914) 448-4000<br><br>     Plaintiff,<br><br>  v.<br><br>SMITHFIELD FOODS, INC<br>200 Commerce Street<br>Smithfield, VA 23430<br>(757) 365-3000<br><br>     Defendant. | Case No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff NATIONAL ECONOMIC RESEARCH ASSOCIATES, INC. ("NERA"), by its undersigned attorneys, brings this action against SMITHFIELD FOODS, INC. ("Smithfield") and alleges as follows:

## INTRODUCTION

1. This action arises from Smithfield's refusal to compensate NERA for economic consulting services. Smithfield requested such services, instructed NERA "to do whatever is necessary" to complete them on an expedited basis, and was aware of the time and efforts required for NERA to meet these demands. Smithfield has acted in bad faith by refusing to compensate NERA for the services that Smithfield requested.

2. Smithfield breached its contract with NERA by refusing to pay NERA's standard hourly rates and reasonable expenses for providing the requested services. NERA should be awarded damages sufficient to place NERA in the same economic position it would be in had Smithfield honored its obligations under the contract.

3. NERA should be permitted to recover the full value of its services under the doctrine of quantum meruit.

4. Smithfield's refusal to compensate NERA constitutes unjust enrichment, as Smithfield has obtained the benefits of NERA's services without payment. NERA is entitled to recover the full value of the services it provided to Smithfield.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000 and is between citizens of different States.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and 1391(c). A substantial part of the acts and omissions giving rise to the claims occurred in the District of Columbia. Smithfield also resides in the District of Columbia.

## PARTIES

7. Plaintiff NERA is a California corporation with its principal office at 50 Main Street, White Plains, New York. NERA is a firm of economists providing economic analysis and advice to corporations, governments, law firms, regulatory agencies, trade associations, international agencies, and others. NERA currently employs approximately 500 professionals operating in 22 offices around the world. None of these offices are located in Virginia.

8. Defendant Smithfield is a Virginia corporation with its principal office located at 200 Commerce Street, Smithfield, Virginia. Smithfield claims to be the world's largest pork processor and hog producer with revenues exceeding $11 billion in fiscal 2006. Over fifty brands of Smithfield pork, beef and other products are sold in supermarkets and delicatessens throughout North America, including in the District of Columbia.

## BACKGROUND

9. On January 13, 2006, Simpson Thacher & Bartlett LLP ("Simpson Thacher"), acting on behalf of Smithfield, engaged NERA to perform multifaceted, highly complex and detailed economic analyses in connection with Smithfield's acquisition of Cook's Hams ("Cook's"), a Nebraska-based producer of smoked ham, corned beef, and other smoked meat items, and possible review of the transaction by the Antitrust Division of the United States Department of Justice ("Antitrust Division" or "DOJ").

10. John Johnson ("Johnson"), Vice President of NERA based in Washington, D.C., directed the project for NERA with a team of other economists and personnel. Much of NERA's work was conducted in its offices in Washington, D.C. Johnson and other NERA team members also conducted work at Smithfield's corporate offices in Smithfield, Virginia.

11. Smithfield and Simpson Thacher instructed NERA in the project. Simpson Thacher also served as an intermediary, relaying most, but not all, of the information exchanged between Smithfield and NERA. NERA's principal contact at

Simpson Thacher was Ethan E. Litwin ("Litwin"), a senior associate who worked under the supervision of Simpson Thacher partners Kevin J. Arquit and Aimee H. Goldstein.

12. Initially, the parties orally agreed that NERA should advise Simpson Thacher whenever NERA's fees for consulting services exceeded $50,000. Simpson Thacher would then obtain approval from Smithfield for further consulting services. On or about February 1, 2006, NERA advised Simpson Thacher that NERA's project fees had reached $65,000 and that the additional work Simpson Thacher was requesting would be "hard to estimate" but at least another $25,000-$50,000. NERA ceased work for approximately one week on the project until Simpson Thacher instructed NERA to resume its work on February 10, 2006, stating that "DOJ called yesterday and that got things moving." On or about February 26, 2006, NERA advised Simpson Thacher that NERA's project fees had reached approximately $100,000. NERA completed the on-going analysis and then briefly ceased work again. On February 28, 2006, Simpson Thacher again instructed NERA to resume its work. Specifically, Simpson Thacher (Litwin) told NERA (Johnson) that "it was time to ramp up [the project] in a significant way."

13. Litwin also told NERA that a matrix of analyses needed to be prepared for Richard J.M. Poulson, Smithfield's Executive Vice President, External Affairs to inform him of the work NERA planned to do. On March 1, 2006, Litwin wrote to Johnson that Smithfield "really needed [this] projects list." Johnson responded that NERA was moving as fast as possible and that he and other NERA personnel "were here very late last night and pounding on it again all morning." The same day, Johnson sent an email to Simpson Thacher, to be forwarded to Smithfield, confirming the matrix of analyses that

NERA was to conduct in rank order. The matrix provided Smithfield and Simpson Thacher with a detailed description of the work that NERA would undertake on behalf of Smithfield.

14.     On March 1, 2006, Johnson (NERA) also informed Litwin (Simpson Thacher) that NERA was taking "the order to do what needs to be done in the two weeks" very seriously and wanted to "be assured that means the client is going to pay for our work." Simpson Thacher responded the same day "of course. But the client will scrutinize the bill closely (as it does ours) and will not appreciate any undue expense. I know this all goes without saying, but with this client I just need to actually say it."

15.     On March 2, 2006, Johnson and Tilling Lee ("Lee") of NERA traveled to Smithfield, Virginia. Johnson and Lee met with C. Larry Pope ("Pope"), Smithfield's President and Chief Executive Officer, at Smithfield's corporate offices. Pope instructed Johnson and Lee that NERA was to give top priority to the project to help support Smithfield's acquisition of Cook's to the Antitrust Division. Johnson and Lee discussed with Pope and others at Smithfield the different analyses that NERA was to conduct to support the acquisition. During a luncheon meeting with Pope; Bart Ellis ("Ellis"), Smithfield's Vice President of Operations Analysis; and Dhamu Thamodaran ("Thamodaran"), Smithfield's Vice President of Price-Risk Management, Pope instructed Johnson and Lee, in words and substance, that NERA should "do whatever is necessary" to complete the analyses as quickly as possible. On this same day, NERA discussed issues related to the economic analyses with multiple Smithfield representatives, including Pope, Ellis, Thamodaran and James D. Schloss, Smithfield's Vice President of

Sales and Marketing. NERA further described its ongoing analyses and other work to the Smithfield representatives at these meetings.

16. From late February to March 15, 2006, Johnson and the rest of the NERA team worked virtually around the clock to complete the economic analyses and other services requested by Smithfield. At no time during this period did either Smithfield or Simpson Thacher inquire about or seek to limit the fees necessary for NERA to complete the requested services.

17. During this same time period, both Johnson and Jennifer Cascone, a NERA consultant in the Washington, D.C. office, regularly corresponded (often several times a day) with Simpson Thacher. Simpson Thacher had comprehensive knowledge of the scope and volume of the work performed by NERA during this period. Simpson Thacher's communications with NERA over these three weeks included, among other things, inquiries about the progress of NERA's work, specific follow-up questions and assignments, and extensive comments on completed analyses and other NERA work product. On multiple occasions, Simpson Thacher expressly acknowledged the extent of NERA's efforts on the project. For example, on March 8, 2006, Simpson Thacher (Litwin) wrote to NERA (Johnson) saying "thanks for all of you[r] hard work. It is coming together." On March 10, 2006, Litwin again wrote to Johnson that Simpson Thacher partners Kevin Arquit and Aimee Goldstein appreciated the complexity of what NERA was attempting to accomplish and were "aware that [this] stuff is complicated and takes some time."

18. Simpson Thacher also regularly communicated about NERA's work with Smithfield. For example, Litwin (Simpson Thacher) was in close contact with Bart Ellis regarding multiple aspects of the project.

19. At various times during the same time period, NERA (Johnson) communicated directly with Smithfield (Bart Ellis), including multiple discussions concerning Smithfield's operations and other information and data necessary for NERA to conduct the requested economic analyses.

20. Throughout this period, NERA also regularly sent portions of its analyses and other work product to Simpson Thacher. Simpson Thacher used NERA's work product to assist in its representation of Smithfield and provided much of NERA's work product to Smithfield.

21. On March 16, 2006, Simpson Thacher informed NERA that the Antitrust Division had determined not to pursue an investigation of Smithfield's acquisition of Cook's. NERA immediately ceased further work on the project.

22. NERA's fees and expenses for this period totaled $274,951.68. NERA sent an invoice to Simpson Thacher for this amount, along with a detailed description of NERA's time and expenses in performing the analyses and other services as instructed by Smithfield and Simpson Thacher.

23. NERA's retention was confirmed in a written agreement that was originally drafted in January, 2006 but (due to the expedited nature of the engagement and related activities) was not executed until May 15, 2006. The agreement was signed by NERA and Simpson Thacher, on behalf of Smithfield. The agreement reflects the fact that NERA was retained on January 13, 2006, provides that NERA is to be compensated

by Smithfield at the standard hourly rates for Johnson and the other NERA personnel, and provides for reimbursement of all of NERA's reasonable expenses.

24.     Despite the agreement and actual services performed by NERA, Smithfield has refused in bad faith to compensate NERA for its fees or expenses.

## COUNT ONE
### (Breach of Contract)

25.     NERA repeats and realleges paragraphs 1 through 24 above as if fully set forth herein.

26.     Smithfield breached its contract with NERA by refusing to pay NERA for the hourly fees and reasonable expenses incurred in providing the requested services to Smithfield.

27.     NERA fulfilled its contractual duty by providing the consulting services requested by Smithfield, at the instruction of Smithfield and Simpson Thacher, until the project was terminated on March 16, 2006.

28.     Smithfield failed to perform its contractual duty of paying NERA its standard hourly rates and reimbursing NERA for its reasonable expenses in providing the requested consulting services.

29.     NERA is entitled to payment of its fees and expenses, plus interest, and other appropriate relief in that amount necessary to place NERA in the same economic position that it would have been in had Smithfield not breached the contract. This includes full compensation for NERA's services as well as incidental and consequential damages.

## COUNT TWO
### (Quantum Meruit)

30. NERA repeats and realleges paragraphs 1 through 29 above as if fully set forth herein.

31. NERA is entitled under the doctrine of quantum meruit to recover the value of the services rendered to, and expenses incurred on behalf of, Smithfield.

32. NERA performed valuable specialized economic consulting services for Smithfield.

33. Smithfield accepted, used, and enjoyed NERA's consulting services.

34. Smithfield was on notice that NERA expected to be paid by Smithfield, and senior Smithfield officials and Smithfield's outside counsel, Simpson Thacher, were aware of the extent of work that NERA was undertaking for Smithfield.

35. NERA is entitled to be fully compensated for both the services it rendered to, and the costs it incurred on behalf of, Smithfield.

## COUNT THREE
### (Unjust Enrichment)

36. NERA repeats and realleges paragraphs 1 through 35 above as if fully set forth herein.

37. Failure to award NERA damages would result in unjust enrichment of Smithfield.

38. NERA rendered its consulting services to Smithfield with the reasonable expectation of being fully compensated for its efforts.

39. Smithfield was on notice that it would be expected to pay for NERA's services because senior Smithfield executives and Smithfield's outside counsel, Simpson

Thacher, instructed NERA to render such services and were aware of the significant efforts necessary for NERA to complete the project within the required time.

40. It would be unjust for Smithfield to retain the benefit of NERA's services without full payment.

41. NERA is entitled to be compensated for the services it performed and the expenses it incurred on behalf of Smithfield.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court grant the following relief:

A. Declare that Smithfield has acted in bad faith by refusing to compensate NERA for the economic consulting services that NERA rendered, at Smithfield's request and instruction, on an expedited basis.

B. Direct Smithfield to pay NERA the outstanding amount of $274,951.68 in fees and expenses, plus interest.

C. Award NERA the costs of this action from Smithfield, including reasonable attorney's fees, as provided by law.

D. Grant NERA such other and further relief as this Court may deem just and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all claims so triable as of right.

Dated: December 4, 2006

                            Respectfully submitted,

                            WILLKIE FARR & GALLAGHER LLP

                            *David P. Murray*

                            David P. Murray (D.C. Bar No. 401758)
                            WILLKIE FARR & GALLAGHER LLP
                            1875 K Street, N.W.
                            Washington, D.C. 20006
                            (202) 303-1000

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Economic Research Associates, Inc.<br>50 Main Street, 14th Floor<br>White Plains, NY 10606  (914) 448-4000 | Smithfield Foods, Inc.<br>200 Commerce Street<br>Smithfield, VA 23430  (757) 365-3000 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David P. Murray
Willkie Farr & Gallagher LLP
1875 K Street N.W.
Washington, DC 20006

ATTORNEYS (IF KNOWN)

CASE NUMBER   1:06CV02073
JUDGE: Richard W. Roberts
DECK TYPE: Contract
DATE STAMP: 12/04/2006

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ● 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(1)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C 1332. Cause for breach of contract, quantum meruit and unjust enrichment.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 274,951.68 + other   Check YES only if demanded in complaint
**JURY DEMAND:** YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  Dec. 4, 2006   SIGNATURE OF ATTORNEY OF RECORD  *David P. Murray*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.